UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-25-GWU

PEARLIE HUFF,                                                                                                 PLAINTIFF,

VS.                                 **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

       Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Pearlie Huff, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of left shoulder tendonitis, recurrent intermittent non-radiating lumbar pain secondary to multi-level degenerative changes in the thoracic and lumbar spine, an adjustment disorder with anxiety, and moderate recurrent major depression.  (Tr. 15).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Huff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 57-year-old woman with work experience as a home health nurse, could perform any jobs if she were limited to "medium" level exertion, with standing/walking and sitting limited to no more than six hours each in an eight-hour day, and also had the

following non-exertional restrictions. (Tr. 428). She: (1) could only occasionally push, pull, or reach overhead with her left upper extremity; (2) could perform no more than "frequent" stooping, kneeling, or crouching; and (3) had the mental capacity to understand, remember, and carry out simple instructions, sustain the attention and concentration to perform simple work tasks and adequately relate to coworkers and supervisors with casual and infrequent contact in an object-focused work environment, and would be able to adapt to "routine changes in pressures of a routine work environment." (Tr. 428-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 429-30).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. (Tr. 78).

Mrs. Huff alleged disability beginning February 15, 2006 due to carpal tunnel syndrome, diabetes, depression, anxiety, inner ear problems, a hearing impairment, back problems, and a torn rotator cuff. (Id.). The ALJ noted that the diabetes was well controlled with medication, that flare-ups of ear problems were not frequent enough to restrict gainful work activity, and that a consultative examiner had noted adequate hearing for normal conversation. (Tr. 16). Therefore, these conditions

08-25  Pearlie Huff

were not found to be "severe," a conclusion which the plaintiff does not challenge on appeal.

The plaintiff does challenge the ALJ's rejection of restrictions cited by a one-time examining physician, Dr. Barry Burchett. Dr. Burchett examined the plaintiff on September 18, 2006, with essentially normal results. For instance, despite Mrs. Huff's allegation of carpal tunnel syndrome, she had a negative Tinel sign, she could make a fist and fully extend her hands, write, and pick up coins with either hand without difficulty, and had a normal range of motion in the joints. (Tr. 259). Her lumbar spine examination showed no tenderness or spasm and straight leg raising was negative, although she was only "fair" in her ability to stand on one leg at a time. (Id.). There were no sensory or reflex abnormalities, she could walk on her heels and toes, and could perform tandem gait and squat without difficulty. (Id.). The range of motion of the shoulders was full. (Tr. 261). X-rays of both knees were "unremarkable" (Tr. 265-6), and a lumbar spine x-ray showed degenerative disc disease with no evidence of fracture or dislocation (Tr. 264). Despite these findings, Dr. Burchett concluded his report by saying that Mrs. Huff would not be able to perform activities that required kneeling, and she would be limited in activities requiring frequent overhead reaching or frequent repetitive motion of her hands.

A state agency physician, Dr. John Rawlings, reviewed the evidence at this point, noting the normal examination findings, and concluding that Dr. Burchett's restrictions on kneeling, overhead reaching, and repetitive motion of the hands were not supported by his examination or other evidence and were given little weight. (Tr. 267).  The ALJ cited the same reasoning for giving Dr. Burchett limited weight. (Tr. 19).

The plaintiff objects that Dr. Burchett was the only physical examiner to list restrictions and asserts that there is some evidence to support his opinion.  The court notes, for example, that an MRI of the left shoulder in June, 2006, which was apparently not available to Dr. Burchett, showed tendinopathy of the supraspinatus tendon versus a partial thickness tear and mild degenerative changes; however, a complete rotator cuff tear was not present.  (Tr. 315).  Both the plaintiff's treating family physician, Dr. Helen O'Donnell, and a physical therapist noted limited range of motion of the left shoulder on testing, for instance.  (Tr. 303, 309).  However, no source other than Dr. Burchett gave any physical restrictions, and it was reasonable to discount his conclusions both in view of the inconsistency between his normal examination results and the stated restrictions, and in addition because of the opinion of Dr. Rawlings, who specifically addressed the issue of Dr. Burchett's limitations.  The ALJ did give the plaintiff the benefit of the doubt in restricting use of her left upper extremity as well as providing some restriction on stooping,

kneeling, and crouching.  In the absence of any other medical evidence of restriction, the court concludes that there is substantial evidence to support the ALJ's choice of limitations.

The plaintiff also objects to the ALJ's rejection of limitations provided by Dr. Samuel Welch, a psychiatrist at the Pathways Mental Health Clinic.  Mrs. Huff initially sought treatment at Pathways on July 6, 2006, and was given a diagnosis by a non-physician staff member of adjustment disorder with anxiety and recurrent major moderate depression, with a current Global Assessment of Functioning (GAF) score of 50.  (Tr. 282).  Her highest GAF for the past year was 60.  (Id.).  A GAF score of 50 reflects "serious" symptoms, while a GAF score of 60 reflects "moderate" symptoms.  <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  Dr. Welch provided a functional capacity assessment on April 17, 2007 stating that Mrs. Huff would have a "poor" (defined as "no useful ability to function") ability to accept instructions and respond appropriately to criticism from supervisors and to travel in unfamiliar places or use public transportation. (Tr. 382).  She would have a "fair" (defined as the ability to "perform the activity satisfactorily some of the time") ability in several other areas such as interacting appropriately with the public, asking simple questions, getting along with coworkers and peers, adhering to basic standards of neatness and cleanliness, and responding appropriately to changes in the work setting.  (Id.).  Dr. Welch cited

anxiety attacks, a diagnosis of social phobia, panic disorder, and generalized anxiety as well as major depression in support of his findings. (Id.).

The ALJ rejected these restrictions because he felt they were not supported by the Pathways treatment notes, which contained no indication of panic attacks or a panic disorder. (Tr. 19). Three individual counseling notes by a therapist from 2007 indicate that the plaintiff was worried about a physical problem that her daughter was having in January, but stated that she was doing much better by March and actually states that "she presents with no problems or issues." (Tr. 378). Dr. Welch's notes are extremely brief and not entirely legible. Of five recorded visits between July, 2006 and March, 2007, he notes only medication refills on three occasions. (Tr. 379). Of the two notes that provide detail, one states that the plaintiff's mood was better and her anxiety was decreased, and the other, from January 12, 2007, states that her mood was "a little more down" but there was "no [significant] anxiety." (Id.). A reasonable fact finder could have concluded that the treatment notes did not support the level of restriction cited by Dr. Welch. Furthermore, the court notes inconsistencies in Dr. Welch's functional capacity assessment, in that he initially noted no restriction in the plaintiff's ability to understand, remember, and carry out instructions, but then asserted that her conditions interfered with her concentration and functioning. (Tr. 381-2). Therefore, the ALJ had reasonable grounds for discounting the treating source opinion, and the

08-25  Pearlie Huff

only other mental health sources to offer opinions, state agency psychological reviewers, both concluded that she did not have a "severe" mental impairment. (Tr. 226, 240). Once again, the ALJ gave the plaintiff the benefit of the doubt in finding any mental restrictions.

The decision will be affirmed.

This the 8th day of October, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge

08-25  Pearlie Huff

only other mental health sources to offer opinions, state agency psychological reviewers, both concluded that she did not have a "severe" mental impairment. (Tr. 226, 240). Once again, the ALJ gave the plaintiff the benefit of the doubt in finding any mental restrictions.

The decision will be affirmed.

This the 8th day of October, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge